BURCHELL *v.* OSBORNE *et al.*

(*Supreme Court, Special Term, New York County.* November 9, 1888.)

1. MORTGAGES—FORECLOSURE—MARSHALING LIENS.

On foreclosure of a "blanket" mortgage on property which was also covered by junior mortgages on the separate parcels, a sale was ordered in parcels, in the inverse order in which the junior mortgages were given. *Held* that, on the sale of the last parcel, the surplus, after paying the blanket mortgage, should be distributed to the holders of mortgages on that tract, though such mortgages were subsequent in point of time to mortgages on other parcels, the latter being merely equitable liens.

2. REFERENCE—EXCEPTIONS TO REPORT.

An exception that a referee erred in failing to find certain facts or conclusions of law is not well taken. The proper practice is to present requests for such findings and except to his refusal to so find.

At chambers. On exceptions to the report of a referee, ordering distribution of the surplus on foreclosure, by Henry J. Burchell against Susannah Osborne and others.

The mortgage foreclosed was a "blanket" mortgage covering eight houses and lots. The decree, which was entered by consent of all parties, directed that the mortgaged premises should be sold in eight separate parcels, and that the order of sale should be inverse to that in which the mortgages, which were held by the defendants, had been given. These mortgages held by the defendants were all subsequent to plaintiff's, and covered, four of them, single house and lots; one of them, three houses and lots; and two of them, the whole eight. The last house sold under the decree was that upon which the defendant Fay held a mortgage, which was next in order of time after plaintiff's. Said house was also covered by a mortgage held by the defendant Mehrhof, which was the fifth in order of time after plaintiff's; and a mortgage held by the defendant Arbogast, which was seventh in order of time. The next mortgage after Fay's in order of time was held by the defendant Brainerd Quarry Company, but did not cover the house covered by Fay's mortgage; and defendant Steers held a mortgage, which was fourth in order of time, and covered still another house. In order to raise sufficient money to pay the amount due plaintiff, it was necessary to sell all the houses. The last house (that covered by Fay's mortgage) sold for $30,000; and, after paying plaintiff, there remained the surplus of $20,000. The principal contest was between the quarry company, on the one hand, and Mehrhof and Arbogast on the other; the company insisting that it had an equitable lien upon the surplus, which was next after Fay's, and Mehrhof and Arbogast claiming that the surplus arose solely from the Fay house, upon which they had specific legal liens which must take precedence over an equitable lien. Another question was raised by the defendant Steers, who contended that the surplus should be apportioned among the holders of mortgages upon the several houses, without regard to priority in time, in proportion to the sums for which the several houses were sold. The referee awarded the surplus to Fay, Mehrhof, and Arbogast, whose mortgages more than equaled same, and the quarry company and Steers excepted.

Daniel Daly, for James Fay. Hal Bell, for Wm. F. Arbogast. Andrews & Purdy, for Andrew Mehrhof. John Hayes and Hy. Arden, for The Brainerd Quarry Company. Paddock & Cannon, for Abraham Steers.

O'BRIEN, J. In the briefs submitted by the counsel who filed exceptions to the referee's report, all of the latter have seemingly been abandoned except the substantial one of the referee's decision as to the mode of distribution of the surplus. It is proper, however, to state that, as to the fees of the referee, the original stipulations, together with his affidavit, would seemingly justify the charge made of $600. The exception that the referee erred in failing to find certain facts or conclusions of law is not well taken. The proper practice

would have been to present requests to find; and exceptions could then have been taken to the referee's refusal so to find. I do not think, however, that the Brainerd Quarry Company or the defendant Steers have been prejudiced by any failure to so present requests, as the exception taken to the referee's conclusion as to the mode of distribution presents the real question upon the motion to confirm the report. The decree herein provided for a sale of the property in the inverse order of alienation, and also directed a sale of only so much of the premises mortgaged to plaintiff as would pay plaintiff and the prior mortgagee. No appeal was taken from the decree; and, so far as it determined the rights of the parties, it is conclusive upon this motion. It seems to me, therefore, that the court has, by the decree, determined the question here presented as between the parties; and, while it has not in so many words provided for the distribution of the surplus as found by the referee, it in fact substantially determined the priority of the liens. Even were this not so, however, I am inclined to the view that the referee's conclusion is correct. If sufficient money had been realized to pay the two mortgages before the eighth lot had been sold, the referee would have been compelled to close the sale, and the mortgages on the eighth lot would have then remained liens on that lot, and all the mortgages on the prior lots would have been wiped out. The effect, moreover, of a contrary construction of the priority of liens would destroy the distinction between a general lien and a specific lien, besides impairing the force and effect of the recording act. As to the mortgages on the other lots, the most that could be claimed for them is that they secured an equitable claim upon the surplus. As I understand the rule, however, where a fund is such that legal specific liens can be obtained upon it, such liens are entitled to payment in preference to mere equitable claims. My conclusion, therefore, is that the exceptions should be overruled, and the report confirmed. As to the claim for an allowance presented on behalf of the counsel for the moving creditor, in view of the fact that this is to be taken out of the amount that would come to another creditor, while something should be allowed, the amount should be small. It is accordingly ordered that, in addition to the costs, he should have an allowance of $100.